<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHERWOOD GROUP ASSOCIATES LLC, et al., | : : : : |
| Plaintiffs, | : : Civil Action No. 14-3320 (ES) (MAH) |
| v. | : : OPINION AND ORDER |
| TOWNSHIP OF UNION, et al., | : : |
| Defendants. | : : |

**SALAS, DISTRICT JUDGE**

**I.   INTRODUCTION**

Before the Court is a Motion to Dismiss the Complaint by Defendants Township of Union, Joseph Florio, Peter Capodice, Anthony Terrezza, Brenda Restivo, and Clinton People, Jr. (collectively, "Defendants"). The Court has considered the relevant submissions accompanying the instant motion and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, Defendants' motion is denied.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Sherwood Group Associates, LLC ("Sherwood") is a New Jersey company that owns three parcels of land within the Township of Union ("the Township"). (D.E. No. 5, Amended Complaint ("Am. Compl.") ¶ 3). The parcels are designated on the Township's map as Block 405, Lots 15, 17, and 18, and are collectively referred to as the "Schaefer Salt Property" because they formerly belonged to the Schaefer Salt Factory, which has been closed and

abandoned for nearly 33 years. (*Id.* ¶¶ 3, 14). Sherwood obtained title to the Schaefer Salt Property in 2004. (*Id.* ¶ 15).

Plaintiff Carol Segal is a New Jersey resident who owns a parcel of land designated on the Township's map as Block 405, Lot 19 (the "Segal Property"). (*Id.* ¶ 4). Segal obtained title to the Segal Property in 2005. (*Id.* ¶ 16).

Combined, the Schaefer Salt Property and the Segal Property (together, the "Property") consist of approximately six acres of land. (*Id.* ¶ 4). Lots 17, 18, and 19 are zoned "RB," which permits one or two-family housing. (*Id.* ¶ 17). Lot 15 is zoned for industrial and office use. (*Id.*). The area surrounding the Property is primarily zoned for residential use. (*Id.*). At all relevant times, the Property has consisted of an abandoned industrial facility. (*Id.* ¶ 18).

The Township is a municipal corporation of the State of New Jersey located in Union County. (*Id.* ¶ 5). Defendant Joseph Florio is the Mayor of the Township and a current member of the Township Committee of the Township of Union (the "Township Committee"). (*Id.* ¶ 6). The remaining individual defendants were additional members of the Township Committee during the relevant time frame. (*Id.* ¶¶ 7-10).

Plaintiffs' Amended Complaint arises out of a dispute between the parties regarding the development of the Property. In essence, Plaintiffs allege "a pattern and course of egregious conduct on the part of the Township and the individual Defendants designed to deprive Plaintiffs of their property rights. . . ." (*Id.* ¶ 11). The Court briefly summarizes the allegations below.

On April 27, 2004, the Township adopted a resolution designating the Schaefer Salt Property as an area in need of redevelopment (a "redevelopment area") pursuant to New Jersey's Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 *et seq.* (the "LRHL"). (*Id.* ¶ 21). A draft redevelopment plan dated January 11, 2005 (the "January 2005 Redevelopment Plan")

was prepared on the Township's behalf, but it was never adopted by the Township Committee. (*Id.* ¶¶ 22, 25). Of note, the January 2005 Redevelopment Plan "authorize[d] the Township to exercise its powers of eminent domain, if necessary, on all properties in the Redevelopment Area." (*Id.*, Ex. B, January 2005 Redevelopment Plan at 6). However, it also specified that "[t]he Township plans to work with any property owner within the redevelopment area to promote the redevelopment of the Area in accordance with this Plan." (*Id.*).

On April 12, 2005, the Township adopted another resolution adding additional lots to the Redevelopment Area, including Lot 19, the Segal Property. (Am. Compl. ¶ 23). As of that resolution, the Property comprises ninety percent of the Redevelopment Area. (*Id.* ¶ 24).

On May 9, 2005, a final redevelopment plan (the "May 2005 Redevelopment Plan") was prepared on the Township's behalf. (*Id.* ¶ 27). Like the January 2005 Redevelopment Plan, the May 2005 Redevelopment Plan "authorize[d] the Township to exercise its powers of eminent domain, if necessary, to acquire properties in the redevelopment area. (*Id.*, Ex. D, May 2005 Redevelopment Plan at 8). Unlike the January 2005 Redevelopment Plan, however, the May 2005 Redevelopment Plan does not include language indicating planned cooperation between the Township and any property owner. (*Id.* ¶ 27). On June 28, 2005, the Township adopted the May 2005 Redevelopment Plan. (*Id.* ¶ 28).

Prior to the adoption of the May 2005 Redevelopment Plan, Sherwood submitted objections to the Mayor and the Township Committee, "advis[ing] the Township that it was unreasonable not to allow Plaintiffs the chance to redevelop of its [sic] Property, which constitutes most of the Redevelopment Plan." (*Id.* ¶ 29).

Following its adoption, on August 8, 2005, Plaintiffs filed an action in New Jersey Superior Court alleging that the May 2005 Redevelopment Plan and the ordinance adopting it are

3

"arbitrary, capricious and unreasonable in that they failed to require the Township to work with Plaintiffs as the principal owners of the Redevelopment Area to advance the redevelopment of the Area, and seeking the vacation of those municipal actions."  (*Id.* ¶ 32).

On or about August 12, 2005, the Township issued a Request for Qualifications ("RFQ") seeking a redeveloper for the Redevelopment Area.  (*Id.* ¶ 33).  A national developer working with Plaintiffs submitted one of three responses to the RFQ.  (*Id.* ¶ 35).

Before the Township was able to select a redeveloper, the Superior Court of New Jersey entered a Preliminary Restraining Order enjoining it from doing so.  (*Id.* ¶ 36).  On September 13, 2015, the Township adopted a resolution authorizing it to begin exclusive negotiations with private development company AMJM, LLC ("AMJM") regarding the Property.  (*Id.* ¶ 37).  Plaintiffs subsequently amended their Superior Court Complaint to seek an order voiding the resolution authorizing the AMJM negotiations.  (*Id.* ¶ 39).  On November 10, 2005, the state court issued an opinion and order to continue the restraining order and deny the Township's motion to dismiss.  (*Id.* ¶ 40).

On December 13, 2005, the Township introduced an ordinance to repeal the May 2005 Redevelopment Plan.  (*Id.* ¶ 41).  Plaintiffs objected, "not[ing] that the Property had been designated in need of redevelopment after a comprehensive study of the Area and specific findings by the Committee[, and] . . . the repeal of the May 2005 Redevelopment Plan would leave an arbitrary underlying zoning classification that would prevent the needed redevelopment."  (*Id.*  ¶ 43).  The Township adopted the ordinance over the objection on December 27, 2005.  (*Id.* ¶ 44).

Plaintiffs filed a Complaint in federal court on February 6, 2006 (the "2006 Action").  (*Id.*  ¶ 49); *see also Sherwood Grp. Assocs. LLC v. Twp. of Union*, No. 06-0535, D.E. No. 1

("2006 Compl."). The parties agreed to settle the 2006 Action, and the Court dismissed the matter without prejudice on January 30, 2008. (Am. Compl. ¶ 50); *see also Sherwood Grp. Assocs. LLC v. Twp. of Union*, No. 06-0535, D.E. No. 43.

The parties' settlement is set forth in their Tolling and Settlement Agreement (the "Settlement Agreement"), dated February 2008. (Am. Compl. ¶ 51; *Id*., Ex. I ("Settlement Agr.")). In relevant part, the Settlement Agreement provides that:

(1) The Township was required to adopt an ordinance reinstating a modified version of the May 2005 Redevelopment Plan (the "Reinstated Redevelopment Plan"). (Settlement Agr. ¶ 1).

(2) Plaintiff was provided a period of three years from the adoption of the ordinance to enter into a purchase and sale agreement for the Property with a contract purchaser. (Settlement Agr. ¶ 3).

(3) Plaintiff had a three year extension (*i.e.*, an aggregate of six years) from the adoption of the ordinance to enter into a purchase and sale agreement for the Property with a contract purchaser if (a) the Township and a prospective contract purchaser failed to execute a redevelopment agreement; (b) Plaintiff's contract purchaser cancels or terminates its contract with Plaintiff for purchase of the property; or (c) Plaintiff has been unable to contract with a purchaser on acceptable terms to Plaintiff despite good faith efforts to do so. (Settlement Agr. ¶ 5).

(4) Plaintiff shall dismiss the litigation with prejudice as to all parties at such time as (i) Plaintiff completes the closing of title with the contract purchaser; or (ii) subject to the two-year extension period, six years have passed since the final adoption of the ordinance. (Settlement Agr. ¶ 6).

> (5) In the event of any circumstance that prevents Final Settlement within the time allowed by this Agreement, Plaintiff may reinstate the litigation on written notice to the Defendants.  (Settlement Agr. ¶ 7).

As required by the Settlement Agreement, the Township adopted the Reinstated Redevelopment Plan on May 27, 2008.  (Am. Compl. ¶ 53).

Accordingly, Plaintiffs have marketed the Property over the past six years and "have also continued to make . . . the Property marketable to potential buyers."  (*Id.* ¶¶ 57-58).  Despite these efforts, however, Plaintiffs have been unable to identify a potential developer or contract purchaser.  (*Id.* ¶ 59).

Plaintiffs allege that the "fundamental limiting factor in marketing the Property has been lack of access" to it—the Property is currently accessible only via a 15-foot-wide access strip from Magie Avenue.  (*Id.* ¶¶ 60-61).  They allege that while increased access to the Property is possible, it is not permitted by the Township under the Reinstated Redevelopment Plan.  (*Id.* ¶¶ 61-68).  They further allege that the Township has been "squashing the interest of potential developers" by advising them of the access issue, demonstrating bad faith, and only pretextually participating in the Settlement Agreement.  (*Id.* ¶¶ 67-69).

On March 18, 2014, Plaintiffs requested that the Township modify the Settlement Agreement "to provide a further reasonable extension to allow the parties to address the access issue which has prevented Plaintiffs from successfully marketing the Property to a developer." (*Id.* ¶ 71).  The Township refused to agree to an extension, or to consider Plaintiffs' proposal regarding the creation of a new access point to the Property.  (*Id.* ¶ 72).

On May 22, 2014, Plaintiffs provided the Court and Defendants with written notice of its intent to reinstate the Complaint from the 2006 Action, invoking paragraphs 7 and 8 of the

Settlement Agreement.  (D.E. No. 17, Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp. Br." at 19).  Pursuant to a May 23, 2014 Order entered by Judge Faith S. Hochberg, Plaintiffs re-filed their Complaint from the 2006 Action with modifications to reflect rulings in the 2006 Action and facts and circumstances about the parties' entry into the Settlement Agreement.  (*Id.*).

Thus, Plaintiffs' Amended Complaint brings claims arising out of the facts described above, and alleges the following causes of action: (1) violations of Plaintiffs' substantive due process and equal protection rights under 42 U.S.C. § 1983 arising out of the repeal of the May 2005 Redevelopment Plan, (Am. Compl. ¶¶ 75-86); conspiracy pursuant to 42 U.S.C. § 1985(3) to deny Plaintiffs' their constitutional rights in violation of the Fourteenth Amendment to the U.S. Constitution, (*Id.* ¶¶ 87-90); (3) action in lieu of prerogative writs under New Jersey law, (*Id.* ¶¶ 91-94); and (4) violations of Plaintiffs' substantive due process and equal protection rights under 42 U.S.C. § 1983 arising out of the lack of access to the Property and the Reinstated Redevelopment Plan, (*Id.* ¶¶ 95-110).  Claims 1 through 3 are from the 2006 Action, and Plaintiffs amended their Complaint, as of right, to add Claim 4.  (Pl. Opp. Br. at 19).

Defendants have moved to dismiss the Amended Complaint, chiefly on the ground that it is precluded by the terms of the Settlement Agreement.  (D.E. No. 14-2, Brief on Behalf of Defendants Township of Union, Joseph Florio, Peter Capodice, Anthony Terrezza, Brenda Restivo and Clifton People, Jr. in Support of Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def. Mov. Br.")).

**III.   DISCUSSION**

    **a.  Whether Dismissal Is Required by the Settlement Agreement**

Defendants first argue that Plaintiffs' Amended Complaint must be dismissed because it is an attempt to reinstate the 2006 Action, which is precluded by the terms of the Settlement Agreement.  (Def. Mov. Br. at 9).  Specifically, Defendants argue that the Settlement Agreement requires that the 2006 Action must be dismissed with prejudice upon either (a) the consummation of a Final Settlement respecting the Property; or (b) the passage of six years from the passage of the ordinance adopting the Reinstated Development Plan, which occurred on May 27, 2008.  (*Id.*; *see also* Settlement Agr. ¶ 6).  The six-year period expired on May 27, 2014, five days after Plaintiffs refiled their Complaint in this matter.  Defendants concede, however, that dismissal with prejudice only occurs "absent *indicia* of some 'circumstance' . . . in their First Amended Complaint which prevented a Final Settlement from happening," which would permit reinstatement under paragraph 7.  (Def. Mov. Br. at 12 (emphasis in original); *see also* Settlement Agr. ¶7).  They argue that paragraph 7 is inapplicable because "Plaintiffs have cited no 'circumstance' in the First Amended Complaint which prevented a Final Settlement from happening, other than 'lack of access' that allegedly limited the marketing of the Property." (Def. Mov. Br. at 12).  Defendants expand on this argument in their reply brief, arguing that "lack of access" is not a "circumstance" preventing final settlement because, *inter alia*, Plaintiffs were aware of the Property's access limitations prior to entering the Settlement Agreement, and Defendants' obligation to facilitate additional access only ripens after Plaintiffs find a contract purchaser.  (D.E. No. 18-2 ("Def. Rep. Br.") at 3-8).

Plaintiffs respond that Defendants assert a "narrow and hyper-technical interpretation" of the Settlement Agreement that contradicts the plain meaning of the agreement as a whole.  (Pl.

8

Opp. Br. at 20). Plaintiffs rely heavily on paragraph 7 of the Settlement Agreement, focusing on the language that *any* circumstance preventing Final Settlement may be grounds for reinstatement. (*Id.* at 20-23; *see also* Settlement Agr. ¶ 7). Plaintiffs argue that lack of access to the Property (and Defendants' unwillingness to assist in providing such access) is a valid "circumstance" that prevented Final Settlement, entitling Plaintiffs to reinstate their claims within the six year period. (Pl. Opp. Br. at 23). They further argue that the Settlement Agreement does not define "circumstance," and that reading the contract as a whole requires the Court to find that the Complaint was properly reinstated. (*Id.*).

      The Court agrees with Plaintiffs. As Defendants admit, the Settlement Agreement requires dismissal of the 2006 Action with prejudice *absent* Plaintiffs' reinstatement of the litigation based on "any circumstance that prevents Final Settlement." (Settlement Agr. ¶ 7). Defendants' argument is therefore that "lack of access" is not a valid "circumstance" under the Settlement Agreement because Plaintiffs were aware of the Property's access limitations prior to entering the Settlement Agreement, and Defendants' obligation to facilitate additional access only ripens after Plaintiffs find a contract purchaser. (Def. Rep. Br. at 3-4). However, Defendants mischaracterize Plaintiffs' stated "circumstance" warranting reinstatement. In addition to "lack of access" to the Property, Plaintiffs allege that "the Township has also been squashing the interest of potential developers, by advising them that the Property is not a viable development because there is no access, and Plaintiffs' rights to the Property will expire under the Tolling and Settlement agreement before access can be perfected." (Am. Compl. ¶ 67). They further allege that "Defendants have acted in bad faith and their agreement to participate in the Tolling Agreement is pretextual." (*Id.* ¶ 69). Thus, the Court must consider these allegations as well in determining whether Plaintiffs have cited a "circumstance" warranting reinstatement.

9

Plaintiffs are correct that the Settlement Agreement does not define "circumstance." In such instances, courts generally rely on dictionaries to determine the plain meaning of contractual terms. *See Barr v. Harrah's Entm't, Inc.*, 555 F. Supp. 2d 484, 494 n.18 (D.N.J. 2008). Merriam-Webster defines "circumstance" as "a condition or fact that affects a situation." Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/circumstance. Here, Defendants' alleged interference with Plaintiffs' attempts to hire a contract purchaser is a condition or fact that would affect Plaintiffs' ability to hire such a purchaser and reach Final Settlement. Plaintiffs have therefore sufficiently alleged a "circumstance that prevents Final Settlement" within the time allowed by the Settlement Agreement. (*See* Settlement Agr. ¶ 7).

This reading of the Settlement Agreement accords with prevailing rules of contract interpretation. First, it is an "elementary canon" of contract interpretation "that a contract must be read as a whole, and that individual provisions must be read in their context and not in a vacuum." *Internat'l Ass'n of Machinists and Aerospace Workers v. U.S. Airways, Inc.*, 358 F.3d 255, 266 (3d Cir. 2004) (citing *In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996). It is an "equally fundamental canon that a contract must be read so as to give effect to all of its parts." *Id.* (citing *New Wrinkel, Inc. v. John L. Armitage & Co.*, 238 F.2d 753, 757 (3d Cir. 1956). Here, though Defendants assert in reply that their motion to dismiss "considers both Paragraphs 6 and 7 of the Agreement" (Def. Rep. Br. at 3 (emphasis in original)), their interpretation of Paragraph 7 does not give full effect to that provision. The Settlement Agreement is clear that "any circumstance" preventing Final Settlement may be asserted to reinstate the litigation. (Settlement Agr. ¶ 7). Defendants' interpretation attempts to narrow that language to "any circumstance" that Defendants consider sufficient. The parties could have limited the scope of

circumstances that Plaintiffs could cite to reinstate the litigation. Yet they chose to employ broad language, and that broad language must be given its full effect.

Because Plaintiffs' allegations of Defendants' interference with Plaintiffs' attempts to secure a contract purchaser are sufficient, the Court does not need to assess (at least at this stage), whether either lack of access itself or Defendants' alleged failure to provide access also constitute a "circumstance" warranting reinstatement. The parties, however, may revisit these issues at the summary judgment stage.

### b. Defendants' Obligation to Provide Access to the Property

Defendants argue that they have no obligation to assist Plaintiffs with obtaining access to the Property, and that therefore (1) Plaintiffs cannot reinstate their Complaint because lack of access cannot constitute a "circumstance," and (2) Plaintiffs' new claim, Count IV, must fail. For the reasons discussed above, the Court does not need to consider at this time whether lack of access itself constitutes a circumstances because Plaintiffs have adequately pled other circumstances permitting reinstatement. The Court further disagrees with Defendants that they had no obligation to assist in providing access to the Property.

"The Court is mindful that the interpretation of a contract's terms is ordinarily a legal question for courts to decide." *Klein v. Budget Rent-a-Car Sys., Inc.*, 2013 WL 1760557, at *6 (D.N.J. Apr. 24, 2013). "However, ambiguous contractual provisions raise questions of fact that are not appropriately decided on a motion to dismiss." *Id.* Here, there is a clear obligation in the redevelopment plan that "the designated redeveloper or, if necessary, the Township will obtain an additional 20 feet of property through purchase or easement along the eastern edge of Lot 57 to create a two-way access driveway of sufficient width to meet Township standards." (May 2005 Redevelopment Plan at 6.) However, it is unclear from its terms precisely when that

obligation is triggered. As a result, the Court does not find that Count IV warrants dismissal on its face, and will consider at a later stage whether Defendants had an obligation to create access to the Property based on the facts of this case.

### c. Plaintiffs' Additional Constitutional Claims

Finally, Defendants argue that Counts II and IV of Plaintiffs' Amended Complaint should be dismissed. (Def. Mov. Br. at 16-17). Plaintiffs respond that this issue is barred by the doctrine of issue preclusion as to Count II because Judge Stanley R. Chesler previously decided it in an order dated December 11, 2006.[1] (*See* Civil Docket No. 06-0535, D.E. No. 17 ("Dec. 11, 2006 Order")). With respect to Count IV, they note that Judge Chesler addressed a similar claim in the 2006 Action and denied Defendants' motion to dismiss. (Pl. Opp. Br. at 26 n.4).

The Court now exercises its discretion to abide by prior rulings in this same case, and therefore declines to dismiss Count II. *See Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) ("In the absence of extraordinary circumstances, this Court should generally adhere to its own prior rulings arising out of the same case."). In addition, the Court finds that Judge Chesler's ruling permitting civil rights claims to go forward is applicable to Plaintiffs' new Count IV in the Amended Complaint to the extent that Defendants argue that a constitutional claim cannot be asserted. The Court therefore will not grant dismissal of either Count II or Count IV.

---

[1] The Court does not need to determine whether issue preclusion specifically applies because it has discretion to abide by prior rulings in this case and will permit Claims II and IV to proceed on that basis. In any event, the Court agrees with Judge Chesler that "Plaintiffs' allegations regarding unconstitutional government action are legally sufficient." (Civil Docket No. 06-0535, D.E. No. 21 (Feb. 8, 2007 Opinion and Order on Reconsideration of Defendants' Motion to Dismiss)).

## IV.     CONCLUSION

For the reasons above, the Court will deny Defendants' motion to dismiss and permit Plaintiffs' claims to proceed at this time.  As noted above, the Court may revisit these issues at the summary judgment stage.

Accordingly, it is on this 17th day of March 2015, hereby **ORDERED** that Defendants' motion to dismiss the Amended Complaint, (D.E. No. 14) is denied.

**SO ORDERED.**

*/s Esther Salas*
Esther Salas, U.S.D.J.